UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DIANE BALLARD,

                    Plaintiff,

        v.                                                          **DECISION AND ORDER**
                                                                    08-CV-141S
HSBC BANK USA, N.A.,

                    Defendant.


## I. INTRODUCTION

        Plaintiff Diane Ballard brings this action pursuant to Title VII of the Civil Rights Act

of 1964, 42 U.S.C. §§ 2000e et seq., as amended by the Civil Rights Act of 1991 ("Title

VII"), for a declaration that she is a prevailing party and to recover attorney's fees.

Presently before this Court is Defendant HSBC Bank USA's ("HSBC") Motion to Dismiss.

(Docket No. 20.) For the following reasons, that motion is denied.


## II. BACKGROUND

**A.      Facts**

        On April 25, 1989 and December 14, 1990, Diane Ballard, a former HSBC employee

who is black, filed charges against her former employer alleging racial discrimination.

(State Division of Human Rights Decision, p. 1; Docket No. 19-2, Exhibit 2.) Under the

statutory scheme of Title VII and pursuant to 42 U.S.C. § 2000e-5(c), Ballard was required

to file these charges with the New York State Division of Human Rights ("Division") before

she could bring a complaint in federal court.[1] Pursuant to the same statute, Ballard's claims

were also cross-filed with the Equal Employment Opportunity Commission ("EEOC").[2] The

two Division charges were substantially similar, with the first alleging discrimination based

on race and the second alleging continued discrimination and retaliation due to her initial

complaint. (Id.) On May 25, 2004, the Acting Commissioner of the Division, Edward

Friedland, issued a Decision and Opinion finding that Defendant HSBC engaged in

unlawful discriminatory employment practices against Ballard. (Id.)[3] Acting Commissioner

Friedland found that HSBC subjected Ballard to a hostile work environment and "that

[HSBC] . . . discriminate[d] against [Ballard] by failing to promote her because of her race

and in retaliation for her original Division complaint." (Id., p. 12.) As a result, Division

ordered HSBC to pay Ballard $35,000 in compensatory damages and $1,630.69 in back

pay. (Id., p. 23.) This order was upheld by the New York State Supreme Court, Appellate

Division, Fourth Department. See Matter of Ballard v. HSBC Bank USA, 42 A.D.3d. 938,

839 N.Y.S. 2d 874 (4th Dep't 2007.)

-------

[1]Title VII embodies a deliberate congressional policy of giving state agencies the first opportunity to resolve discrimination complaints. An aggrieved person may not even file a lawsuit or a charge with the EEOC until sixty days after proceedings have been commenced under state law. 42 U.S.C. § 2000e-5(c); see Love v. Pullman Co., 404 U.S. 522, 92 S. Ct. 616, 30 L. Ed. 2d 679 (1972). Specifically, the claimant must initially file her charge with Division, and the EEOC must "defer" to Division by taking no action on the charge for at least sixty days. Id. § 2000e-5(c)-(d). After the sixty-day deferral period expires, the claimant may continue to pursue her claim in the state system or may ask the EEOC to intervene. Id. § 2000e-5(f). The EEOC may file a lawsuit on the claimant's behalf or release the claim so that she may file it herself, but if the agency fails to complete its work on the charge in a timely manner, the claimant may request a "right-to-sue" letter and proceed to court. Id. Any subsequent lawsuit may be filed in either state or federal court. Id.; Yellow Freight Sys., Inc. v. Donnelly, 494 U.S. 820, 110 S. Ct. 1566, 108 L. Ed. 2d 834

[2]The EEOC, a federal body located in Washington D.C., is responsible for enforcing federal laws that make it illegal to discriminate against a job applicant or an employee because of the person's race, color, religion, sex (including pregnancy), national origin, age (40 or older), disability or genetic information. U.S. Equal Employment Opportunity Commission, Overview, http://www.eeoc.gov/eeoc/.

[3]A full finding of the facts that led to this decision can be found in the State Division of Human Rights' Decision, pp. 2-11.

On November 20, 2007, having taken no action itself and having received a request from Ballard, the EEOC issued her a right-to-sue letter.[4] (Docket No. 19-2, Exhibit 3.) Upon receipt of this letter, under § 706(f)(1), Ballard then had 90 days to file a Title VII action in federal district court.

## B.    Procedural History

Ballard, within the ninety-day period,  filed a complaint in this Court on February 19, 2008 (Docket No. 1) seeking a declaratory judgment that HSBC violated her rights under Title VII and attorney's fees as a "prevailing party" under the same statute. HSBC moved to dismiss the complaint (Docket No. 2); Ballard opposed the motion and sought leave to amend its complaint. (Docket No. 8.) In an Order dated September 30, 2009, this Court found that Ballard could amend her complaint as a matter of course under Fed. R. Civ. P 15 and consequently denied HSBC's motion to dismiss without prejudice. (Docket No. 18.) Thereafter, Ballard amended her complaint (Docket No. 19) and HSBC renewed its motion to dismiss. (Docket No. 20.)

## III.  DISCUSSION

## A.    Legal Standard

Rule 12 (b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12 (b)(6).  Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim.  Fed. R. Civ. P. 8 (a)(2).  But the plain statement must "possess enough heft to show that the pleader is entitled to relief."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1966, 167

---

[4]Pursuant to § 2000e-5(f)(1).

3

L.Ed.2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Legal conclusions, however, are not afforded the same presumption of truthfulness. See Ashcroft v. Iqbal, 556 U.S. __, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S.Ct. at 1945 (quoting Twombly, 550 U.S. at 570). Labels, conclusions, or a "formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. Iqbal, 129 S.Ct. at 1949. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. Id. at 1950; Fed. R. Civ. P. 8 (a)(2). Well-pleaded allegations must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

Courts therefore use a two-pronged approach to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). This examination is context specific and requires that the court draw on its judicial experience

4

and common sense. <u>Iqbal</u>, 129 S.Ct. at 1950. First, statements that are not entitled to the presumption of truth — such as conclusory allegations, labels, and legal conclusions — are identified and stripped away. <u>See Iqbal</u>, 129 S.Ct. at 1950. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief." <u>Id.</u>

**B.      HSBC's Motion to Dismiss**

Although Ballard has not framed her complaint as such, it is essentially a claim solely for attorney's fees. Her Title VII rights have already been vindicated by Division under the scheme set up by that statute. Ballard asserts two different claims here: one for attorney's fees and the other for punitive damages. But the Civil Rights Act of 1991, which permits punitive damages in this context, is not retroactive. <u>Landgraf v. USI Film Prods.</u>, 511 U.S. 244, 247, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994). Accordingly, because punitive damages were not available under Title VII at the time she filed her complaints with Division in 1989 and 1990, such damages remain unavailable to her now. <u>See id.</u> All that remains then is her claim for attorney's fees, which has always been permitted under Title VII, but which is not allowed at the Division level.

HSBC moves to dismiss this claim on three grounds: (1) it is barred by res judicata; (2) this Court lacks subject matter jurisdiction; and (3) Ballard is not a prevailing party under Title VII. Each issue is discussed separately below.

**1.      Res Judicata**

Because Ballard's suit in this Court arises out of the same set of facts as her claims at Division, HSBC argues res judicata bars this action. "Under the doctrine of res judicata, or claim preclusion, 'a final judgment on the merits of an action precludes the parties . . .

from relitigating issues that were or could have been raised in that action.'" <u>Flaherty v. Lang</u>, 199 F.3d 607, 612 (2d Cir. 1999) (quoting <u>Rivet v. Regions Bank of La.</u>, 522 U.S. 470, 118 S. Ct. 921, 925, 139 L. Ed. 2d 912 (1998). A suit will be precluded "when it involves the same 'transaction' or connected series of transactions as the earlier suit." <u>Maharak v. Bankamerica Corp.</u>, 128 F.3d. 94, 97 (2d Cir. 1997). The doctrine extends to civil rights claims litigated at the EEOC and Division level. <u>See</u> <u>Kremer v. Chemical Const. Corp.</u>, 456 U.S. 461, 102 S. Ct. 1883, 72 L. Ed. 2d 262 (1982); <u>see also</u> <u>Day v. Distinctive Personnel Inc.</u>, 656 F. Supp. 2d 331, 337 (E.D.N.Y. 2009) (collecting cases).[5]

However, the bar does not apply "if the initial forum did not have the power to award the full measure of relief sought in the later litigation." <u>Davidson v. Capuano</u>, 792 F.2d 275, 278 (2d Cir. 1986). As explained in § 26(1)(c) of the Restatement (Second) of Judgments (1982), the exception applies where "[t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority." <u>see also</u> <u>Marrese v. Am. Acad. of Orthopaedic Surgeons</u>, 470 U.S. 373, 382, 105 S. Ct. 1327, 84 L. Ed. 2d 274 (1985) ("With respect to matters that were not decided in the state proceedings . . . claim preclusion generally does not apply where 'the plaintiff was unable to . . . seek a remedy because of the limitations on the subject matter jurisdiction of the courts.'") (quoting Restatement (Second) of Judgments § 26(1)(c) (1982)).

Here, there is no dispute that Division did not have the authority to award attorney's fees to Ballard. Conversely, Title VII explicitly grants district courts this authority:

---

[5]This is only true where, as here, the state agency decisions have been reviewed in court.  <u>Nestor v. Pratt & Whitney</u>, 466 F.3d 65, 73 (2d Cir. 2006) (citing <u>Univ. of Tennessee v. Elliot</u>, 478 U.S. 788, 106 S. Ct. 3220, 92 L. Ed. 2d 635 (1986)).

> In any action or proceeding under this subchapter[,] the court, in its discretion, may allow the prevailing party, other than the [EEOC] or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

42 U.S.C. § 2000e-5(k)

Therefore, because the "initial forum" did not have the power to grant the "full measure of relief," res judicata does not apply. New York Gaslight Club v. Carey, 447 U.S. 54, 65, 100 S. Ct. 2024, 64 L. Ed. 2d 723 (1980) (finding an action for attorney's fees in federal court to be a supplement to state remedies that "do not provide prompt or *complete relief.*") (emphasis added).

This position finds support in the Second Circuit. See Nestor v. Pratt & Whitney, 466 F.3d 65 (2d Cir. 2006).[6] In Nestor, the court allowed a Title VII claimant, who prevailed in the Connecticut Commission on Human Rights and Opportunities ("CCHRO")[7] and on appeals in the Connecticut state courts, to bring an action in federal court seeking additional remedies that were unavailable in the CCHRO proceedings. Id. Although the claimant in Nestor, as discussed below, brought claims in federal court for additional damages as well as claims for attorney's fees, the court's application of the principle of res judicata is equally forceful and binding here. Ballard seeks additional relief, which is specifically contemplated by Title VII and which was unavailable at the administrative level. As the court in Nestor held, "[A] state court's decision on the merits of a discrimination claim is entitled to full faith and credit, but . . . Title VII permits a claimant to seek – in

---

[6]The court in Nestor found that the claim was not precluded under federal or Connecticut law.

[7]For all relevant purposes, the CCHO serves the same function in Connecticut as Division does in New York.

federal court – 'supplemental' relief that was unavailable in the state court." Id. at 72.

HSBC also cites several cases where federal courts have applied res judicata in this context. However, in each of these cases the state court upheld a dismissal of the plaintiff's claim. See, e.g., Day, 656 F. Supp. 2d 331; Kremer, 456 U.S. 461. Because the respective state courts granted the plaintiffs *no* relief, there could be no issue as to the ability of the state court to grant *full* relief; they are, accordingly, immaterial.[8]

## 2.    Subject Matter Jurisdiction

HSBC argues that this Court does not have subject matter jurisdiction over an action for attorney's fees only.[9] Section 2000e-5(f)(3), the statutory provision granting subject matter jurisdiction to federal district courts over actions brought under Title VII, states, in relevant part, "Each United States district court . . . shall have jurisdiction of actions brought under this subchapter." 42 U.S.C. § 2000e-5(f)(3). The issue before this Court is whether Ballard's claims solely for attorney's fees and costs are "actions brought under this subchapter," or, posed differently, whether Ballard can recover costs arising out of administrative and state proceedings.

The Second Circuit has not specifically addressed this question. In fact, it explicitly declined to do so. See Nestor, 466 F.3d at 70, n.4 (2d Cir. 2006) ("We need not and do not decide whether a *fees only* suit may be brought under Title VII.") (emphasis added).

---

[8] This issue is related to subject matter jurisdiction, which is discussed next.

[9] As cited above, an award of attorney's fees and costs under Title VII is authorized by 42 U.S.C. § 2000e-5(k), which states:

In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

This question has split other Circuit Courts. *Compare* Jones v. Am. State Bank, 857 F.2d 494 (8th Cir.1988) (holding that Title VII plaintiff may bring suit to recover attorney's fees after successfully litigating before a state administrative body), Patzer v. Bd. of Regents, 763 F.2d 851, 858 (7th Cir.1985) (holding that state court judgment affirming an administrative decision did not bar a subsequent federal action for additional relief because of "national policy that Title VII remedies be available to supplement state remedies for employment discrimination"), Lewis v. Ames Dept. Stores, Inc., No. 3:97 Civ. 1214, 1999 WL 33116610 (D.Conn. Mar. 31, 1999) (same); *with* Chris v. Tenet, 221 F.3d 648 (4th Cir. 2000) (holding that federal court lacked jurisdiction to hear plaintiff's suit solely seeking attorney's fees incurred in a prior administrative action).

In support of its position, HSBC asks this Court to follow the Fourth Circuit's holding in Chris, 221 F.3d. 648. There, after a thorough analysis of statutory interpretation doctrine, the court unequivocally found that Title VII – specifically the language granting federal courts jurisdiction (§ 2000e-5(f)(3)) –  does not permit an action solely for attorney's fees. It concluded:

> Our consideration of the ordinary meaning of the language of 42 U.S.C. § 2000e-5(f)(3), as well as the context in which that language is used in 42 U.S.C. § 2000e-5(f)(3) and throughout Title VII, leads us to conclude that the meaning of "actions brought under this subchapter" is plain and unambiguous. The jurisdictional grant in 42 U.S.C. § 2000e-5(f)(3) refers to legal proceedings in a court of law to enforce the substantive rights guaranteed by Title VII, specifically the right to be free from employment discrimination on the basis of race, color, religion, sex, or national origin. Importantly, the result dictated by our interpretation of Section 2000e-5(f)(3) does not preclude a prevailing complainant from claiming fees and costs; rather, it merely limits the complainant to claiming fees and costs solely in the forum where the substantive claims are ultimately resolved.

Id. at 653.

The court in Chris also examined two pertinent Supreme Court cases, Carey, 447 U.S. 54 and N.C. Dep't of Transp. v. Crest St. Comty. Council, Inc., 479 U.S. 6, 107 S. Ct. 336, 93 L. Ed. 2d 188 (1986).

In Carey, the claimant filed a charge with the EEOC alleging discrimination based on race. 447 U.S. at 56-58. As required by § 706(c) of Title VII, the complaint was then forwarded to Division. Id. After an investigation, Division found that the New York Gaslight Club ("Gaslight") had unlawfully discriminated against Carey and awarded her back-pay. Id. Subsequently, Carey filed suit in the Southern District of New York alleging the same set of facts as in her EEOC complaint. Id. Meanwhile, Gaslight was appealing Division's decision in the New York courts. Id. When the New York Court of Appeals ultimately denied Gaslight leave to appeal, it agreed to comply with the Division order and the parties mutually agreed to drop all charges in federal court – except Carey's claim for attorney's fees. Id. Like the action before this Court, the question presented to the Supreme Court was whether Carey could proceed with her claim solely for attorney's fees.

Beginning its discussion with a statutory analysis 42 U.S.C. § 2000e-5(k) (quoted above), the Court reasoned, "It cannot be assumed that the words 'or proceeding' in § 706(k) are mere surplusage." Id. at 61. It continued, "Section 706(k) authorizes a fee award to the prevailing party in 'any . . . proceeding under this title.'" Id. (emphasis in original). Thus, it found that Congress intended to grant federal courts the power to award attorney's fees for all actions under Title VII, not merely actions in the federal courts. It found that section 2000e-5(f) and section 2000e-5(k) of Title VII "authorize a federal-court action to recover an award of attorney's fees for work done by the prevailing complainant in state

proceedings to which the complainant was referred pursuant to the provisions of Title VII."

447 U.S. at 71.

The Court in <u>Carey</u> also found that policy considerations pointed towards the same result. Because Title VII mandates that claimants resort to state or local remedies before they can bring an action in federal court, it found that:

> It would be anomalous to award fees to the complainant who is . . . only partially successful in obtaining state or local remedies, but to deny an award to the complainant who is successful in fulfilling Congress' plan that federal policies be vindicated at the state or local level. Since it is clear that Congress intended to authorize fee awards for work done in administrative proceedings, we must conclude that [Title VII's] authorization of a civil suit in federal court encompasses a suit solely to obtain an award of attorney's fees for legal work done in state and local proceedings."

<u>Id.</u> at 66.

But HSBC argues (as the court in <u>Chris</u> ruled) that <u>Crest St.</u>, decided six years later, casts doubt on <u>Carey</u>, and suggests a different result. In <u>Crest St.</u>, the Crest Street Community Council filed an administrative complaint with the United States Department of Transportation alleging that a proposed plan by the North Carolina Department of Transportation to extend a federally funded expressway through a predominantly black neighborhood in Durham, North Carolina, would violate Title VI of the Civil Rights Act of 1964. <u>See</u> 479 U.S. at 9. The dispute was eventually settled and, subsequently, the Crest Street Community Council filed a separate complaint in federal court to recover fees pursuant to 42 U.S.C. § 1988(b).[10] <u>See id.</u> at 11. In concluding that federal courts may not

---

[10]42 U.S.C. § 1988(b) provides in pertinent part:
> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 [20 U.S.C. § 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42

award attorney's fees under § 1988 in actions brought solely for that purpose, the Court found that, [i]It is entirely reasonable to limit the award of attorney's fees to those parties who, in order to obtain relief, found it necessary to file a complaint in court." Id. at 14. The Crest St. Court also disregarded the Carey Court's policy considerations, calling them "dicta" and "exaggerated." Id. at 13-14.

In further support of this position, the Crest St. Court cited Justice Stevens' concurrence in Carey, where he noted, "It is useful to emphasize that this federal litigation was commenced in order to obtain relief for [Carey] on the merits of her basic dispute with [Gaslight]] . . . [w]hether Congress intended to authorize a separate federal action solely to recover costs, including attorney's fees . . . is not only doubtful but is a question that is plainly not presented by this record." In other words, because the propriety of the Court's jurisdiction in Carey was measured on the face of the complaint (which was filed before the parties agreed to drop all the claims except those for attorney's fees), there was little doubt about the Court's power over the case.

Since these two seemingly conflicting decisions, several Circuit Courts of Appeal have considered this issue. As indicated above, the Fourth Circuit found the Crest Ct. decision persuasive and ruled that it lacked jurisdiction to hear an attorney's fees only claim. However, in Jones, the Eighth Circuit reached the opposite conclusion, finding that "[t]he analysis of Title VII offered by the majority in Carey requires a decision in favor of [claimant]. 857 F.2d at 497.  The Seventh, Ninth, and Tenth Circuits agree with the Eighth.

---

U.S.C. § 2000bb et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.
§ 2000d et seq.], or Section 13981 of this title, the court, in its discretion,
may allow the prevailing party, other than the United States, a reasonable
attorney's fee.

Patzer, 763 F.2d 851; Porter v. Winter, 603 F.3d 1113 (9th Cir. 2010); Slade for Estate of

Slade v. U.S. Postal Service, 952 F.2d 357 (10th Cir. 1991).

For the following three reasons, so does this Court.

First, federal courts have jurisdiction notwithstanding the specific jurisdictional grant

found in Title VII.[11] 28 U.S.C. § 1331 broadly grants district courts the power to hear all

cases involving federal questions. This includes all cases in which federal law creates the

cause of action. In fact, this is the most basic and long-recognized grant of jurisdiction.

Merrell Dow Pharms. Inc. v. Thompson, 478 U.S. 804, 819 106 S. Ct. 3229, 92 L. Ed. 2d

650 (1986) (quoting  Am. Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260, 36

S. Ct. 585, 60 L. Ed. 987 (1916). 42 U.S.C. § 2000e-5(k) plainly creates an action to

recover fees:

> In any action or proceeding under this subchapter the court, in
> its discretion, may allow the prevailing party, other than the
> Commission or the United States, a reasonable attorney's fee
> (including expert fees) as part of the costs, and the
> Commission and the United States shall be liable for costs the
> same as a private person.

Accordingly, such a claim, born and sanctioned by federal law, is appropriate in federal

court under § 1331. See Aurecchione v. Schoolman Transp. Sys. Inc., 426 F.3d 635, 638

(2005) (finding that Title VII questions are properly resolved in federal district court.)

Second, federal jurisdiction for a fees only suit aligns with congressional intent. One

of Congress' primary purposes in enacting § 2000e-5(k) was to "make it easier for a

plaintiff of limited means to bring a meritorious suit." Carey, 447 U.S. at 63 (quoting

---

[11] That grant reads: "Each United States district court . . . shall have jurisdiction of actions brought under this subchapter." 42 U.S.C. § 2000e-5(f)(3). This is the language that the court in Chris determined did not confer jurisdiction for a fees only claim.

Senator Hubert H. Humphrey, Senate Debate on the Civil Rights Act of 1964, 110 Cong. Rec. 12724 (1964)). To accomplish that goal, federal courts retain the "ultimate authority" to enforce Title VII. Carey, 447 U.S. at 64 (citing Alexander v. Gardner-Denver Co., 415 U.S. 36, 44-45, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974)); accord Manders v. Oklahoma, ex rel. Dep't of Mental Health, 875 F.2d 263, 267 (10th Cir.1989) ("The Carey Court reasoned that to effectuate Congress' purpose in enacting [42 U.S.C. § 2000e-5(k)] – making it easier for a plaintiff of limited means to bring a meritorious suit – attorney's fees must be available to compensate counsels' efforts in required administrative proceedings to prevent plaintiffs from being deterred from pursuing meritorious claims by the prospect of having to pay fees.").

As the Court in Carey reasoned, "Title VII merely provides a supplemental right to sue in federal court if satisfactory relief is not obtained in state forums. § 706(f)(1). One aspect of complete relief is an award of attorney's fees, which Congress considered necessary for the fulfillment of federal goals." 447 U.S. at 67-68.

"The Carey majority stated its conclusion in a manner that clearly applies to claims originally brought solely to recover attorney's fees incurred in Title VII administrative proceedings: 'Since it is clear that Congress intended to authorize fee awards for work done in administrative proceedings, we must conclude that [42 U.S.C. § 2000e-5(f)(1)'s] authorization of a civil suit in federal court encompasses *a suit solely to obtain an award of attorney's fees for legal work done in state and local proceedings*.'" Porter, 603 F.3d at 1116 (quoting Carey, 447 U.S. at 66) (emphasis added.)

Here, Ballard had no choice but to seek relief before Division, which awarded her the only relief possible under state law. Her next step was to the federal courts, which are

to operate as residual guarantors of Title VII rights. This policy is so strong that the Court in <u>Carey</u> "nearly anticipated these facts in giving an example of the reach of its reasoning." It stated:

> For example, if state proceedings result in an injunction in favor of the complainant, but no award for back-pay because state law does not authorize it, the complainant may proceed in federal court to "supplement" the state remedy. The state law which fails to authorize back-pay has not been pre-empted.

<u>Jones</u>, 857 F.2d at 498 (quoting Carey, 447 U.S. at 68).

As such, a suit for attorney's fees is proper as a supplemental remedy under Title VII.

Finally, <u>Crest St.</u> is not controlling due to the contrasting procedural nature of a § 1988 suit. Title VII mandates that claimants pursue grievances at the EEOC or agency level before they are allowed access to federal court. This is not true under § 1988 where the filing of an administrative complaint is voluntary. The significance of this distinction was evident to both the <u>Carey</u> and <u>Crest St.</u> Courts. The <u>Carey</u> Court reasoned, "It would be anomalous to award fees to a complainant who . . . is only partially successful in obtaining state or local remedies, but to deny an award to the complainant who is successful in fulfilling Congress' plan that federal policies be vindicated at the state or local level." Thus, the <u>Carey</u> Court recognized that a complainant ought not be denied full relief simply because she followed the rules.

There is no doubt that the <u>Crest St.</u> Court criticized some of the reasoning on which the <u>Carey</u> decision was based. However, the <u>Crest St.</u> Court's decision itself was based, at least in part, on the assumption that a claimant was free to bring her claim in the forum she deemed best. <u>See</u> <u>Crest St.</u>, 479 U.S. at 14-15 ("We have also suggested in past

15

cases that today's holding would create an incentive to file protective lawsuits in order to obtain attorney's fees. See Carey, 447 U.S., at 66, n. 6.  Upon reflection, however, we think that the better view was expressed by our conclusion in Webb, 471 U.S. at 241, n. 15, that "competent counsel will be motivated by the interests of the client to pursue . . . administrative remedies when they are available and counsel believes that they may prove successful.")[12] Counsel for Ballard, however, had no such option, substantially weakening the basis for such a conclusion.

Because these cases construe fee shifting provisions that appear within different statutory schemes, Crest St. did not modify or overrule Carey, and this Court, in a Title VII setting, is not bound to follow the Crest St. Court's interpretation of a Title VI provision. See Agostini v. Felton, 521 U.S. 203, 237, 117 S. Ct. 1997, 138 L. Ed. 2d 391 (1997) ("If a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court[s] of Appeal [and by extension district courts] should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decision.")

For the reasons stated above, this Court is bound by Carey, under which, Ballard's suit is proper.

### 3.    Prevailing Party

HSBC next argues that Ballard is not a prevailing party under Title VII because Division, in its decision, made no reference to Title VII and instead referred only to violations of New York State Human Rights Law. However, the Court in Carey found that

---

[12] The Court in Webb also held that, "Administrative proceedings established to enforce . . . rights created by state law simply are not any part of the proceedings to enforce § 1983." 471 U.S. at 241. Of course, the opposite is true here. Administrative remedies are part of the fabric of the Title VII scheme.

if a party is successful in the very action that Title VII referred her to and required her to invoke (i.e the Division proceedings), she will accordingly be deemed a "prevailing party" under that statute. 447 U.S. at 71. This is true, in part, because the elements proving a discrimination claim are virtually identical under federal and state anti-discrimination law. See Walsh v. City of Auburn, 942 F. Supp. 788, 796 (E.D.N.Y. 1996); see also Song v. Ives Labs., Inc., 957 F.2d 1041, 1048 (2d Cir. 1992) (observing that New York has adopted wholesale federal standards in discrimination cases). Here, there is no question that Balled prevailed at the Division level, which decidedly renders her a "prevailing party" under Title VII.

## IV. CONCLUSION

Because Nestor holds that Ballard's suit is not barred by res judicata and because Carey holds that Ballard is a prevailing party who is entitled under Title VII to bring claims for supplemental relief in federal court, Ballard has stated a cognizable claim and HSBC's motion to dismiss is denied.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion to Dismiss (Docket No. 20) is DENIED.


Dated:      October 26, 2011
            Buffalo, New York


                              /s/William M. Skretny
                              WILLIAM M. SKRETNY
                              Chief Judge
                              United States District Court

17